# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00173-CR

**Fernando Cruz, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-11-201926, HONORABLE CLIFFORD BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Fernando Cruz guilty of aggravated assault with family violence and found that he used or exhibited a deadly weapon—a knife—in committing the offense. The trial court found an enhancement paragraph to be true and assessed sentence at five years in prison. *See* Tex. Penal Code § 22.02(a)(2). Appellant contends on appeal that the evidence was insufficient to support the jury's finding that he intended to use the knife in a manner capable of causing death or serious bodily injury. He also contends that his counsel rendered ineffective assistance because he failed to object to the State's impeachment of his sole witness without proof that the witness's arrest led to a final conviction. We affirm the judgment.

**Was the evidence sufficient to support the deadly-weapon finding?**

The jury found that appellant threatened his estranged wife, C.C., and in doing so used or exhibited a knife that in the manner of its use or intended use was capable of causing death

or serious bodily injury. *See id.* § 1.07(a)(17)(B). Appellant contends that the evidence showed that he did not open the folded knife and, therefore, that the manner of the knife's use or intended use was not capable of causing death or serious bodily injury.

When reviewing the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 326). We presume that the jury resolved any conflicting inferences in favor of the verdict and we defer to those resolutions. *Id.*

C.C. testified that she dropped their son off at a baseball practice and then drove to a store to buy him a sports drink. As she returned, appellant called her on the telephone, angry that their son had arrived late. She testified that, when she got to the baseball field, appellant approached her in the parking lot and spoke to her in an angry tone but did not yell. She testified that appellant stood close enough to her that he touched her, pulled a closed knife out and put it beside her, called her a bitch, and said, "You want me to threaten life on you?" She testified that she told peace officers that meant he threatened her with violence. She testified that appellant also threatened to kill her father. C.C. described the knife as having a button, said that appellant had his finger on the button, and called it "like a switch, I guess, a switch blade the ones that just go like that." She agreed, however, that a person wanting to use the knife would have to flip open the blade.

The Travis County Sheriff's deputies who came to the scene also testified. Deputy Peter Burke testified that C.C. told him that appellant leaned against her, pulled the knife out of his

2

pocket, showed it to her, and asked if she wanted him to threaten her with violence. He found a folding lockblade knife in appellant's front pocket. Deputy Antonio Aguilar testified that C.C. told him that appellant had pressed the knife against her. He testified that the knife's blade was three to four inches long and "slides out on the side." He testified that the knife was capable of causing serious injury or death. Aguilar used both hands to open and close the knife.

Appellant's witness, Angselee Bibb-Serrano, testified that she saw the confrontation between appellant and C.C., but did not see appellant get close to C.C. or use a knife at all.

Appellant concedes that, if the knife is open, it is capable of being used as a deadly weapon. But he argues that because—even accepting C.C.'s testimony as true—the knife was undisputedly folded closed, the evidence did not show that the knife was capable of causing death or serious bodily injury in the manner it was used or intended to be used. He argues that the knife was "wholly incapable of causing serious bodily injury or death unless the blade is disengaged from the handle." He contends that, viewed most favorably to the jury's verdict, the evidence shows that he used the knife to frighten C.C. but not in a manner capable of causing serious bodily injury.

In *McCain v. State*, the court of criminal appeals considered the sufficiency of the evidence to support a jury's finding that a defendant used or exhibited a deadly weapon. 22 S.W.3d 497, 499 (Tex. Crim. App. 2000). The defendant kicked in a kitchen door and hit the victim numerous times with his fist. *Id.* He had in his back pocket a long, dark object that the victim believed was a knife and feared that the defendant would use to cut her. The court of criminal appeals wrote, "There was no evidence that appellant touched, brandished, referred to, or overtly displayed the knife in any way other than having it partly sticking out of his pocket." *Id.* When the defendant was arrested, he had a knife with a nine-inch blade. *Id.* The court of appeals reversed the

deadly-weapon finding because there was no form of threatening conduct relating to it other than merely carrying it. *Id.*[1] The court of criminal appeals wrote:

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*Id.* at 503. The court of criminal appeals reversed the court of appeals's judgment, concluding that "the mere carrying of a butcher knife during such a violent attack as occurred in the present case was legally sufficient for a factfinder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury." *Id.* The fact that the knife was visible in the defendant's pocket was sufficient use or exhibition for the deadly-weapon finding. *Id.* Although mere possession was not enough, the weapon was used in facilitating the underlying crime. *Id.*

Unlike in *McCain*, there is no evidence that appellant struck C.C. with his fist or did anything similarly violent. Like the defendant in *McCain,* appellant never unsheathed the blade itself. But, unlike in *McCain*, evidence showed that appellant intentionally held the closed knife against C.C. while he threatened her with violence. We conclude that the closed knife, placed against a person's body to emphasize a threat of violence or homicide, is at least as capable of causing serious bodily injury as a knife that is kept in a pocket and never referred to during a violent

---

[1] Citing the court of appeals opinion, *McCain v. State*, 987 S.W.2d 134, 137-138 (Tex. App.—Houston [14th Dist.] 1998), *rev'd*, 22 S.W.3d 497, 499 (Tex. Crim. App. 2000).

attack.  Under *McCain*, we conclude that the evidence is sufficient to support the jury's finding that appellant used a deadly weapon when threatening C.C.

**Did defense counsel render ineffective assistance?**

Appellant contends that his counsel was ineffective because he failed to object to the admission of evidence at the guilt-innocence phase of trial of the only defense witness's alleged criminal history.  An appellant complaining of ineffective assistance must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance.  *Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013).  A single instance of counsel's error can rise to the level of deficient performance,"if the error was egregious and had a seriously deleterious impact on the balance of the representation." *Id*.  We indulge a strong, rebuttable presumption that counsel's actions fell within the wide range of reasonable and professional assistance.  *Salinas*, 163 S.W.3d at 740.  Appellate courts will rarely find ineffective assistance on a record that is silent as to counsel's trial strategy.  *Freeman v. State,* 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003).  Yet even on a silent record, a finding of ineffective assistance of counsel is appropriate if the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 102-03 (Tex. Crim. App. 2005).  If we find counsel's performance deficient, we must also determine whether there is a reasonable probability sufficient to undermine

5

confidence in the outcome that, but for counsel's deficiency, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

Appellant's sole witness at guilt-innocence, Bibb-Serrano, testified that she saw a confrontation between appellant and C.C. in the baseball-field parking lot. She said that appellant was standing carrying a watermelon and that C.C. stayed in her vehicle. Bibb-Serrano testified that she heard them yelling unpleasantries at each other, but did not hear a threat, see appellant get close to C.C., or see a knife. Bibb-Serrano also testified that she did not know C.C., had known of appellant, and did not like appellant. Bibb-Serrano was the only witness whose testimony conflicted significantly with C.C.'s version of events.

Appellant complains that his counsel did not object when the court allowed the State to question Bibb-Serrano about whether she had been arrested in Florida for theft—a crime of moral turpitude that can be used to impeach a witness. *See* Tex. R. Evid. 609(a). The State first questioned her outside the presence of the jury and then, after the court concluded Bibb-Serrano had indicated that she was convicted of some kind of theft-related offense, in the jury's presence. She testified that she had been arrested for taking a book from a store and many other items from other stores. She said that the charges were at first felonies, but then were changed because she did not steal the other items and had mistakenly believed that the book was hers. She said she never went before a judge and was not convicted, but admitted that her attorney told her she could not get into trouble for a month. The State did not offer any documentation of any conviction.

We conclude that appellant has not shown his trial counsel provided ineffective assistance. During the voir dire examination of Bibb-Serrano, he interjected that he "did not hear of any conviction," after which the State asked more questions that elicited Bibb-Serrano's uncertainty

6

regarding the details of the prosecution of her alleged offenses. Counsel did not object at trial minutes later—perhaps not wanting to risk alienating the judge or jury by objecting to evidence already ruled admissible. Even if not objecting to the impeachment evidence was a mistake, appellant has not shown either that this mistake was so egregious that competent counsel would not have engaged in it or that this single incident rendered counsel's entire assistance ineffective. In addition to calling Bibb-Serrano, the only eyewitness not directly involved in the altercation, appellant's trial counsel filed numerous pretrial motions, participated in voir dire, examined witnesses, ensured that the court had included an instruction on his right not to testify, and called several witnesses at punishment. We conclude that appellant has not rebutted the presumption that his counsel's representation fell within the wide range of reasonable and professional assistance, and thus that appellant has not shown that he received ineffective assistance of counsel.

## CONCLUSION

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed: May 8, 2014

Do Not Publish

7